The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Thank you. Good afternoon. We'll next call 4-23-0607. Kevin Ayo et al. Appellants v. Louis Quintero et al. Appellees. Counsel for the appellant, please state your full name for the record. John Paul Cunarod. Thank you. Counsel for the appellee. James Arthur Hanson. Thank you, Counsel. Thank you both. You may proceed with arguments. Thank you, Your Honor. Good afternoon and may it please the court. My name, as I said, is John Paul Cunarod. I represent the plaintiff appellants in this case, Kevin and Gaynelle Ayo. And broadly speaking, I would caution this court that should it choose to uphold the lower court's order of dismissal, it would firstly be effectively codifying the lower court's conflation of two separate legal documents being the doctrine of public nuisance and the doctrine of private nuisance. And secondly, it would also be overlooking the plain and well-pled facts in this case, which entitle my clients to a decision on the merits here and to their true day in court. The briefs in this case more or less echo the party's filings at the lower level. And so, to the extent the court would allow, I'd like to briefly review the complaint here in at the lower level, the motion to dismiss and the plaintiff's response to that motion. The complaint, as the court's well aware, seeks redress under two legal theories. The first being the theory of intentional interference with the prospective economic advantage and the second being relief under the doctrine of private nuisance. Now, the defendant's motion to dismiss relies upon two cases in response to the plaintiff's private nuisance claim. The first being the City of Dixon v. Messner, which itself states that a municipality cannot regulate and prohibit as a nuisance a residence from building effectively a privacy fence, right? Defendants also rely in their motion to dismiss as to private nuisance upon the Guest v. Reynolds case, a Supreme Court case, which stands for the premise that every lawyer learns in law school, which is no landowner has a right to the air, view, and light above a neighbor's lot. And that's, of course, well taken. That said, neither of those two cases are precisely on point. And so, effectively, what the defendants are asking here is for the court to extrapolate and expand upon the holdings in both those decisions to create, effectively, a complete defense to a private nuisance claim for all legal activities that one engages on on their own land. Defendants also seek the dismissal of count two of plaintiff's complaint, that being the intentional interference with a economic advantage, by implying that the defendants could not, as a matter of fact, have known about the pending sale given that the clearing of the trees and the woods in the building of the fence commenced early in 2020 prior to the signing of a contract in July of that same year. Now, moving on, of course, to the plaintiff's response to that motion to dismiss, the Iowa's addressed this argument that how could the defendants of Quinteros have known about this arrangement by pointing out that, well, for one, we're all aware that negotiations typically precede the signing of a contract, and it's reasonable to infer that these negotiations did occur in this situation prior to the signing of that contract, but more to the point. In paragraph 12 of the complaint, plaintiffs state, and I quote, after learning of the pending sale, defendants began to clear trees and build their fence. The complaint, in a plainly stated, well-pled assertion, states that the defendants knew. So, in regards to the private nuisance count, plaintiffs, in their response to that motion to dismiss, point out that defendants' reliance upon the Dixon case, as in city of Dixon, is misplaced, and that that case concerns the doctrine of public nuisance, and so whether a municipality is within the rightful scope of its police powers to regulate nuisances that are occasioned by its residents, that decision, Dixon, does not deal with the doctrine of private nuisance, which itself is not a creation of statute. By the way, public nuisance is a creation of statute, right? Municipalities only have the authorities that the legislature grants municipalities by nuisance. Can you tell me, in terms of the pleadings, what were defendants' actions as alleged, and then how did they constitute a nuisance under Illinois law? Yes, sure, your honor. Thank you. As far as the specific actions, it'd be threefold. Well, yeah, in effect, encircling my client's property, because again, the Quinteros, in this case, we have a section of land, right? And the section is divided into quarters. The Quinteros have the northwest, northeast, and southeast, as I recall, quarters. The remaining quarter, the southwest, would be owned by my clients. So in effect, the defendants cleared and then built a fence around my client's property, and furthermore, unreasonably and repeatedly rode ATVs up and down the property line during the middle of hunting season. Those would be the three actions. Now, as to how those three actions constitute a nuisance, well, doctrine of nuisance basically says that you can do what you like on your own property, but what you can't do is invade another landowner's interest in their property, whether that invasion is negligent or intentional, as long as it's unreasonable. And if you do invade your neighbor's use of their property, then the court is to apply a balancing test. What's the gain to the party engaging in the Well, counsel, just focusing for the moment on the building of the fence, is there any authority, any case ever held that building a fence constitutes a nuisance? No, there's not, your honor. So what about the clearing the area, their side of the fence and riding vehicles in it? Any case law that says that would constitute a nuisance? I've done what I believe is a thorough review, and I'm not aware of any authority one way or the other on that issue. So we would be the first if we agreed with your argument? I believe so, although I would also say that, of course, this hearing is for the purpose of a motion to dismiss. This case hasn't yet proceeded to a hearing on its merits, so this court wouldn't be as it's well aware, affirming or reversing a decision on its merits, just allowing this case to proceed to trial. You made reference to how the defendants had knowledge of the pending sale with, what's the name, Beese, how's that pronounced? Beese, Justin Beese, I believe. Beese, okay. So your complaint alleged knowledge of a pending sale, but in your complaint, you didn't include the contract that the plaintiffs had with Beese, did you? Your Honor, in the- There's got to be yes or no answer, counsel. You included the contract, or you didn't, with your complaint? I don't believe so, Your Honor, because we're not suing on the contract. Okay, but as far as information, because isn't it a requirement of Illinois law that the defendants must have knowledge of both the contract and of the fact they are interfering with the performance of the contract? Correct, Your Honor, under the doctrine of intentional interference with the perspective- Well, the contract wasn't included, and what did you allege about their knowledge that they were interfering with the contract? Just that they had knowledge of it before they commenced to building the fence. Although for- And what about they had knowledge that they were interfering with the performance of the fence? That allegation isn't in your complaint, is it? No, it's not, Your Honor, and so we're all aware that Illinois is a fact-pleading jurisdiction, right? Isn't that a requirement? No, Your Honor. Reasonable inferences are allowed. Out of the constellation of human interactions, we can't plead every single fact relevant to a complaint, but it would seem reasonable inference that if it is alleged, as it is in the complaint, that the Quinteros knew about the business arrangement and that the Quinteros acted to build this fence and also add to that the reasonable inference, which is common sense, that there is no other justification, no other reason to build this fence or ride those SUVs, or ATVs, rather, along that fence line during honey season except to frustrate the economic value, the primary use of my client's land during honey season at the same time that the buyer was hunting up on that land. So, your argument is that people on their own land, they clear it and put up a fence, have to provide some justification sufficient to satisfy their neighbors? No, not at all, Your Honor. It's a free country, right? And even the lower court pointed out that a person has a right to do whatever they want legally on their own property, and that's how it ought to be. But if the court would indulge an analogy, I think about the movie Home Alone in the McAllister's house, that big brick mansion of a house in a beautiful neighborhood, right? Let's say that I own the house next to it, and I want to buy the McAllister's house, but it costs a ton of money. It's a huge house. I only have enough money to pony up half of that amount. So, I give them an offer of 50 cents on the dollar. They reject it. Fair enough. They put out a realtor sign in the front yard, and that tells me to prepare because henceforth, anytime I see a prospective buyer pull up in the driveway, I'm going to walk out that front door, and I'm going to have a boom box on one shoulder, and I'm going to have a can of beer in the other hand and a folding chair under my arm, and I'm going to be dressed in only American flag skivvies, and I'm going to plop down right next to that driveway every time a prospective buyer comes by and make an obvious nuisance of myself. Now, am I legally allowed to do that? Yeah, yeah, and you should be, but if the obvious intention is to interfere with a prospective business deal, then I render myself liable to liability under the tort of intentional interference with the prospective economic advantage. Go ahead. Thank you, Your Honor. All right. So with regards to the defendant's motion to dismiss targeted at count two of the complaint being intentional, well, sorry, count one, being intentional interference with the prospective economic advantage, as I was saying, the defendants imply that they could not have of the pending deal, but the complaint itself states they did. All well-pled facts are admitted as true, and due to that, we would urge the court to find just that, that they did know as pled in the complaint. Moving on to the nuisance count, defendants rely on the Dixon case, of course, right? Now, the Dixon case, that is a case concerning private nuisance. The court, in fact, makes a distinction when they say that, and I quote here, no public interests are involved, no rights of the adjoining owner have been violated, but if they have been, he should be left to redress his wrongs in a private action. As a starting point, questions of government authority to regulate nuisances are just simply governed by different considerations than those involved in the doctrine of private nuisance, which concerns relations between private landowners, and similarly, defendants' reliance on the guest case in their motion is misplaced for two reasons. One being that the plaintiff is not the guest case saying no landowner has a right to the air, light, and view over a neighbor's property. Plaintiffs aren't asking for a view or light or air over the Quintero's property or in their complaint, so that doesn't even have any direct application here, and while that is a useful broad rule of law, while that broad rule of law has great utility to this court in governing the relations between people who live in a populated area, I would argue that the extension of that rule of law to address relations between rural landowners of wide swaths of land whose so far, of course, I've been talking about the motion to dismiss, and that's what we're here to talk about, but to talk about the defendant's motion too much is to give short shrift to the strengths of the plaintiff's complaint, and so... Mr. Coonrod, if I could interrupt, I want to get back to the nuisance and just whether or not the acts that were alleged in the complaint could ever be used to justify the writing of the ATVs. It indicates that the ATV writing occurred around the time of a whitetail youth hunt, first part of October, and it would seem the implication there is the inference sought to be drawn is that the ATV writing was done with the implicit purpose of disrupting Mr. Besey's deer hunting. Am I right about that? Yes, Your Honor. Okay. If the defendant's ATV writing was instead 50 days a year, 100 days a year, 365 days a year, would you be able to make that same claim? Your Honor, I'm somewhat constrained in my response, although I'll endeavor to give as good of an answer as I can, by the fact that we're only at the motion to dismiss stage, and so there are only the scant facts contained in the complaint before this court. This is as to whether or not it could ever be stated as a cause of action, ATV writing on one's own land, whether that can constitute a private nuisance. So I do think that it's relevant to this inquiry. Sure, sure. Then I'll try and be more specific. I think the writing of ATVs, presumably right along the property line, 50 days a year, the question will come down to whether that's unreasonable, and if there's no reason for the writing right on, if there's a good reason to be doing just that, then I would say that it is reasonable. Here, of course, it only occurred during the hunting season, as complained of, and the purpose seems, the inference of that purpose seems pretty clear. So under your theory, if the defendants were writing on their property, but near the property line with your clients, they would have to have a justification for writing in that location in order to avoid being deemed a private nuisance? I mean, my response would simply be that you know unreasonable when you see it, and it's not just the writing of the ATVs. It's also coupled, in this case, with the building of the fence and the clearing of the trees right around the time that there is a reason for them to be doing these things. A person can do whatever they want with their own property, as I was saying earlier, but some actions carry with them consequences like prospective liability under a tort, which accompanies unreasonable behavior. And again, at this stage, we're only dealing with the motion to dismiss. So because of that, I would view this not as saying a person has to come up with a justification every time they want to ride their ATV next to another person's property. What I would say is, if a person engages in objectively unreasonable behavior, again, they can do that, but if it's so obvious and egregious, then they subject themselves to a lawsuit, and of course they do. That's the case with all sorts of conduct that occurs in our society. Counsel, just to make sure we're clear, you had a motion to dismiss that the trial court granted, and you elected to sit on that, did you not? Your Honor, it's kind of a... You chose not to try to amend the complaint? I did not, specifically because even though a leave was granted to amend the complaint, there was no such amendment that would redress the court's decision that would be available. A yes would suffice, but you didn't. Yes, Your Honor. You're correct. Okay. But just still commenting on the procedure, following that order, it was something of a catch-22, right? Because typically orders become final 30 days after the court, in its original order, didn't state that this order is a final order. And so, one can't typically just go to a judge and say, hey, did you mean to say that this is a final order? On the flip side, you hate to wait 30 days to see if a subsequent order gets issued by the lower court saying, all right, now this order's final. So instead, all you can do, absent an appropriate here, is a couple of days before the eclipsing of that 30-day period, which was the case here, file the appeal then. Now, this court then noted that language to the effect of this order as final needs to be included in the order. And so, it got sent back to the trial court. We brought that to the lower court's attention. He included that language in a subsequent order, and my clients appealed the subsequent order, and that's how we got here. Okay. Thank you. So, speaking as to intentional interference with the perspective economic advantage, I can't presume to know the court's mind here, of course, but it seems to me there are four elements to that cause of action, right? There's a reasonable expectation of entering into a business arrangement. There's the second element, which is defendant's knowledge of expectancy. The third element, intentional and unjustified interference, which induces a breach or termination. And then the fourth element is damage resulting from the defendant's interference. With regards to the first element, a reasonable expectation of entering into a transaction, we have a signed contract. That's alleged in the complaint. With regards to the second element, the defendant's knowledge... Well, Mr. Coonrod, you've reminded us of the elements. However, you are out of time. Thank you, Your Honor. Mr. Hanson? Thank you. I appreciate it. First, to count one, I'd like to address the perspective, intentional interference with the perspective economic advantage. And I will concede, as I stayed here today, as Justice Harris said, I believe all reasonable inferences should be given to the plaintiff. And so as we address count one, let's assume then that the allegation in paragraph 12 of the complaint is sufficient enough by him stating that the defendants knew of the pending sale. So arguably, they can show, let's say, count element one, I would like to focus... Excuse me, count two, the defendant's knowledge of the expectancy. Number three is where I think the plaintiff's case fails. And it is that the interference by my clients was intentional, and then the next word is important, and unjustified. So both of them must be applicable. And as the justices have brought out, and Mr. Coonrod has stated, if you look at the complaint, there are three items of actions that are alleged against my clients. Number one is they cleared a swath of land. And if you look at the complaint carefully, nowhere does Mr. Coonrod allege that it was trees. It is devoid of any description of what the swath was that was cut, or how large it was, or what it was. Mr. Hanson, would that even matter? I mean, couldn't your clients have clear cut their entire property if they wanted? Yes, I agree 100%. It doesn't matter. I'm just stating that earlier, he said it was a swath of trees. That's not what the complaint says. But to your point, the swath of land, and for that matter, all of the actions as alleged, are being done on my client's own property, as alleged by the plaintiff. Number two, the fence. Again, is an eight-foot tall fence an unjustified interference? The cases on the nuisance, private nuisance, we've cited. I also would state the Carroll v. Hurst case, which is this fourth district's own case, talks about that. Anyone can build a fence on their own land. The question for this court is, as alleged, is an eight-foot tall fence that my clients build on their own property intentional and unjustified interference into this expectancy? We would argue it is not, as we did in our motion. And the third argument, the third action, if you will, which I think is important to also note, as the plaintiffs alleged, this is land that is hunting ground in Pike County, Illinois. And I would advise that writing ATVs on land such as this is commonplace and certainly not unjustified. But as was brought out earlier, if my clients are allegations pled as to, for instance, how many hours a day, what type of noise it was, were they sitting there revving engines only? It clearly states they were riding ATVs on their own property. And during hunting season, reasonable inferences are landowners ride ATVs to get to many as alleged under count one would be unjustifiable and an unjustifiable interference. Mr. Hanson, let me ask you a hypothetical and let me preface it by pointing out the existence and probably aware of it, the Illinois Hunter Interference Prohibition Act, which makes it a class B misdemeanor for anyone to interfere with the lawful taking of a wild animal by another with the intent to prevent the taking or disturbing or engaging in an activity that will tend to disturb wild animals with intent to prevent their lawful taking. Now, if plaintiffs had alleged that defendants ATV riding coincided with Mr. Bessie's acts of hunting, in other words, they were able to allege Mr. Hunt or Mr. Bessie was present to hunt on these specific dates and that on those days and no other time defendants proceeded to run their ATVs along the property line. Could they state a cause of action for private, excuse me, could they state a cause of action? And I'm not concerned at this point about what that action would be termed. Yes. With the caveat that I think under your hypothetical, the next thing they would have to put in there is, and the defendant's action caused Mr. Bessie or Bessie, sorry, I can't remember how it's pronounced from taking the wild game or animals that he was there to hunt on those days. And, but for the actions of the defendants, he would have obtained a wild deer kill or whatever animal he was hunting. I would agree with you that under that scenario, yes, I believe by that specific identifying dates, actions, and that those actions more specifically pled prohibited him, Mr. Bessie from getting the deer he came to on those dates to get as long as it was within hunting season, obviously. Yes. I would agree with that. And going to another point that was made, I would disagree with opposing counsel. The chance was made to amend to allege such things as that the court gave plaintiff 21 days to amend, to allege certain more identifiable things such as that, if they had so chosen. So they didn't, and here we are, and that's their choice, and that's how we will proceed. The second thing I want to talk about is under the nuisance count and the case law, which again, it's an and, and this is even under a private nuisance claim, the substantial invasion of the other's interest in the use and enjoyment of his or her land, it must be intentional or negligent, but again, it must be, it says, and unreasonable. And the ownership of my client of their property comes with it, the general right to use and enjoy it as they deem fit. So what this court is addressing is the underlying trial judge's on dismissal of the nuisance action based on the rationale, were my client's actions reasonable in the use of their property? Again, all the actions, the three that we've talked about occurred on my client's land. Certainly we believe those were reasonable actions of writing your ATVs. So for instance, I guess the next question would be, where do we extrapolate this and stop? So let's say my client was writing a go-kart or a four-wheeler or a motorcycle on their own land. Again, does that fall as an unreasonable activity? Again, we would say it is not. They can use the land as they deem fit. The cases cite the various items. I'm not going to go over them all again, but the court must look at the trial court's decision under the nuisance. Was it intentional? If it wasn't, was it negligent? And even if it was negligent, was it unreasonable? And as we argued below, the actions of simply clearing a swath of land, putting up a fence and writing ATVs for a landowner of this type of land is not unreasonable. All of those things being said, we would ask that this court uphold the trial court's decision when it granted the motion to dismiss with prejudice. Thank you. Thank you, Counsel Rebuttal. Thank you, Your Honor. Briefly, with regards to Mr. Hansen's issue with intentional interference, specifically the unjustified nature of the interference, and I can address at the same time his concern with the unreasonable nature of the interference under the private nuisance transaction, it seems clear to me that unjustified and unreasonable, you can arrive at both those conclusions if the implied intent of otherwise legal conduct would be clearly to interfere with the primary productive use of a neighbor's property, here hunting. Again, a person can do whatever they want on their own land, but nobody has the right to harm their neighbors by unreasonable conduct. And if there is no other routine explanation for the action, then, and again, we're talking about the totality of the actions here, the clearing, the building, and the ATV riding, not just the ATV riding, then one just has to specifically interfere with hunting on the other property. And if the only reasonable, plausible purpose for such behavior is to interfere with that reasonable use of your neighbor's property to harm your neighbor, I just can't help but think that the nature of that conduct is then itself unreasonable under the private nuisance analysis and unjustified under the intentional interference analysis. Mr. Coonrod, you didn't allege that defendants were not riding their ATVs outside of this time frame, that being the deer hunting in the deer archery and youth shotgun season in October of 2020. So how can there be an inference made that the ATV riding was the purpose of which was to interfere with that deer hunting? It's somewhat difficult at this stage to plead that specifically because the court would almost have to rely on judicial notice that during hunting season, it's spectacularly poor to be roaring around on a loud SUV when you know people are up in trees trying to get deer. No, plaintiffs could have alleged that defendants at no other times or on only a handful of times outside of the deer season rode their ATVs in a similar manner or that they timed specifically in regards to the deer hunting season, they timed their riding to exactly coincide to Mr. Besey's attempts to hunt deer. Those would be ways of pleading a cause of action potentially that would allow for an inference of interference. All I can point to is that as is stated in the complaint and not on information and belief even, that Mr. Besey himself when he terminated the purchase agreement specifically referenced the behavior of the Quinteros as a reason for his termination. Okay, thank you. Thank you, your honor. If there are no other questions, I'd be happy to wrap up and simply respectfully ask this court to reverse the lower court's order dismissal and to remand it with such directions. Thank you for the court's time. Thank you. Seeing no questions, the court will take this matter under advisement and now stands in recess.